```
                    UNITED STATES DISTRICT COURT
                    EASTERN DIVISION OF KENTUCKY
                    SOUTHERN DIVISION at PIKEVILLE

BRIAN ROBERTS,                   )
                                 )
     Plaintiff,                  )
v.                               )    Case No. 7:14-CV-57-JMH
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of           )    MEMORANDUM OPINION & ORDER
Social Security,                 )
                                 )
     Defendant.                  )
                                 )

                              ***
```

This matter is before the Court upon cross-motions for summary judgment (DE 15, 18) on Plaintiff's appeal, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his application for disability insurance benefits. The Court, having reviewed the record and the parties' motions, will deny Plaintiff's motion and grant Defendant's motion.

**I.**

The Administrative Law Judge ("ALJ"), conducts a five-step analysis to determine disability:

    1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

    2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id*. "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id*.

## II.

At the time of the Administrative Law Judge's ("ALJ") decision, Plaintiff was forty-seven years old (Tr. 53). He is a high school graduate with past relevant work as a coal truck driver (Tr. 180-93). Plaintiff applied for disability insurance benefits (DIB) in September 2011, alleging that he became

2

disabled on June 28, 2011, by back pain, high blood pressure, and thyroid disease (Tr. 167, 198). These applications were denied initially, on reconsideration, and by ALJ LaRonna Harris following a video hearing (Tr. 35-42, 99-105).

In April 2011, Plaintiff reported a sudden onset of pain and numbness in his right thigh and leg (Tr. 346). An MRI showed bulges in his lower back (lumbar spine) with associated narrowing of the spinal canal (spinal stenosis) and nerve root openings (neuroforaminal stenosis) (Tr. 340). Then, on June 28, 2011, Plaintiff went to the emergency room with complaints of lower back pain radiating into his right leg after hitting a pothole in the road (Tr. 333). Tara Newsome, M.D., observed that Plaintiff had a restricted range of motion (ROM) in his lower back, and that there was evidence of pain with flexion, extension, and lateral bending (Tr. 335). In July 2011, an updated MRI of Plaintiff's lower back showed severe facet degenerative joint disease, mild spinal stenosis, and moderate foraminal stenosis at one level (L5-S1) (Tr. 281-82). A neurosurgeon saw Plaintiff later that month and recommended physical therapy, not surgical intervention (Tr. 324-25). Dr. Newsome disagreed, as she "[did] not feel [Plaintiff] would be a good candidate for physical therapy" (Tr. 326). She advised Plaintiff to get a second opinion with a different neurosurgeon

(Tr. 326), who did not recommend any specific treatment (see Tr. 316). Plaintiff takes Flexeril, Percocet and Neurontin to try to ease the pain and which cause side effects, such as sleepiness. (TR at 54-55).

In November 2011, David Winkle, M.D., observed that Plaintiff could tandem walk, heel walk, and toe walk on his right side, although he could not knee squat more than half way or toe walk on the left side (Tr. 273). Plaintiff had slightly reduced ROM in his forward flexion and extension (75 degrees when 90 degrees is normal), normal lateral flexion on both sides, and full (5/5) muscle strength in his legs (Tr. 276). He moved about the examination room without using any assistive devices and with no apparent gait disturbance and was able to get up and down from the examination table and in and out of his chair without difficulty or assistance (Tr. 274). An x-ray of Plaintiff's lower back showed slight narrowing of the L5-S1 interspace (Tr. 274). Without offering any specific limitations, Dr. Winkle opined that Plaintiff's ability to lift heavy objects, bend, and stoop and to sit, stand, and walk for prolonged periods was impaired (Tr. 274).

In February 2012, state agency psychologist Ann Hess, Ph.D., and state agency physician Diosdado Irlandez, M.D., reviewed the record to evaluate Plaintiff's claimed mental and

4

physical limitations (see Tr. 92-95). Dr. Hess opined that there was "no evidence of a discrete mental impairment" (Tr. 93). Dr. Irlandez opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; could sit, stand, and/or walk about six hours each in a workday; and experienced several postural limitations (Tr. 94-95).

In March and April 2012, Plaintiff told Dr. Newsome that he continued to experience low back pain radiating into his legs (Tr. 283-88). Also, for the first time, he reported symptoms of depression in April 2012 (Tr. 284). Dr. Newsome noted only some tenderness in Plaintiff's spine, in addition to a positive straight leg raising test (Tr. 285, 288). In an undated opinion, Dr. Newsome opined that Plaintiff was "unable to work at [that] time" (Tr. 280).

In February 2012, state agency psychologist Ann Hess, Ph.D., and state agency physician Diosdado Irlandez, M.D., reviewed the record to evaluate Plaintiff's claimed mental and physical limitations (see Tr. 92-95). Dr. Hess opined that there was "no evidence of a discrete mental impairment" (Tr. 93). Dr. Irlandez opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; could sit, stand, and/or walk about six hours each in a workday; and experienced several postural limitations (Tr. 94-95).

At the March 2013 administrative hearing, Plaintiff testified that he could not work due to constant pain in his back and right leg, which limited him to sitting or standing for 30 to 35 minutes at a time, walking for 10 or 15 minutes, lifting five to 10 pounds, and carrying less than 10 pounds (Tr. 53, 59-60). Plaintiff reported depression, but he had not seen a psychologist or psychiatrist (Tr. 71). The ALJ asked an independent vocational expert (VE), Casey Vass, to assume a hypothetical individual of Plaintiff's age, education, and work experience, limited to medium work with postural limitations including the option to sit and stand (Tr. 64). The VE said that there would not be any medium jobs that such a hypothetical individual could perform, but that he could perform three light jobs (mailroom clerk, cashier, and office assistant) and three sedentary jobs (surveillance system monitor, product inspector, and charge account clerk) (Tr. 65-66).

The ALJ issued a decision finding that Plaintiff had failed to establish his entitlement to DIB under the agency's five-step sequential evaluation (Tr. 35-42). See 20 C.F.R. § 404.1520(a)(4). The ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work with postural limitations, including the option to sit or stand as needed (Tr. 38) and that, while Plaintiff could not perform his

past relevant work, he could perform other work existing in significant numbers in the national economy, namely the six light and sedentary positions identified by the VE (Tr. 41-42).

The agency's Appeals Council declined Plaintiff's request for review in March 2014 (Tr. 1-4), making the ALJ's decision the final agency decision for purposes of judicial review. 20 C.F.R. §§ 404.981, 422.210(a). This appeal followed. Plaintiff has exhausted his administrative remedies, and this case is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### III.

Judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g), *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). This Court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Id*. "As long as substantial evidence supports the Commissioner's decision, we must defer to

7

it, even if there is substantial evidence in the record that would have supported an opposite conclusion...." *Warner*, 375 F.3d at 390 (quoting *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)) (internal quotation marks omitted).

### IV.

In his Motion for Summary Judgment, Plaintiff first asserts that the ALJ erred when he determined that no postural accommodation, i.e., the option to sit and stand as needed, was warranted for Plaintiff and, by extension, that he erred in concluding that there was work available to Plaintiff since the vocational expert ("VE") testified that such a limitation would eliminate the performance of the few alternate light and sedentary jobs that the VE testified to be available to Plaintiff. Reaching back, however, the foundation of his argument is his contention that the ALJ erred in failing to give controlling weight to treating physician Dr. Tara Newsome's conclusion that Plaintiff was unable to return to work due to his pain and postural limitations and by concluding that her analysis could be interpreted to suggest that he could return to work at some point.

The Commissioner's regulations provide that when a treating physician submits a medical opinion, the ALJ must either defer

8

to the opinion or provide "good reasons" for refusing to defer to the opinion. *See* 20 C.F.R. § 404.1527(c)(2); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). However, a treating physician's opinion that a claimant is "disabled" or "unable to work" is not entitled to any special deference or significance because it is not a true medical opinion but, instead, addresses the ultimate issue reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), (d)(1); SSR 96-5p, 1996 WL 374183, at *2 ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). The Sixth Circuit has repeatedly rejected Plaintiff's argument that an ALJ is obligated to give controlling weight to a treating physician's statement that a claimant is unable to work. (*See* Pl. Br. 2-3). *See, e.g.*, *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 727 (6th Cir. 2014) ("A doctor's conclusion that a patient is disabled from all work may be considered as well, but could "never be entitled to controlling weight or given special significance" because it may invade the ultimate disability issue reserved to the Commissioner."); *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 471 (6th Cir. 2014) (unpublished) ("However, 'a treating physician's opinion is only entitled to. . .deference when it is a *medical opinion*.'" (quoting *Turner v. Comm'r of Soc. Sec.*, 381

F. App'x 488, 492-93 (6th Cir. 2010) (unpublished) (emphasis in original)). "If the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors—[the ALJ's] decision need only 'explain the consideration given to the treating source's opinion.'" *Curler*, 561 F. App'x at 471 (quoting *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) (unpublished) (further citations omitted)).

In the present case, the ALJ did explain his consideration of Dr. Newsome's undated opinion that Plaintiff was unable to work. The ALJ rejected the conclusion that Plaintiff was so limited that he could not perform some work, citing among other things the fact that Plaintiff had not sought further treatment, such as physical therapy, as recommended; the limited pain management treatment received; the absence of a referral for injections; and the absence of nerve conduction studies/electromyography testing (Tr. 40) even though Plaintiff complained of numbness and tingling "on occasion" (Tr. 280, 287, 290, 293).[1] He compared Newsome's assessment that Plaintiff

---

[1] Plaintiff also argues that the ALJ failed to recognize the Claimant's relative poverty as a rationale as to why not all medications, counseling, physical therapy, and surgery could be taken immediately. There is no citation to the record to support this conclusion, and the Commissioner has responded that

was unable to work Claimant's complaints of numbness and tingling in his legs reported by Dr. Newsome and the inconsistency between Dr. Newsome's statement that Plaintiff experienced constant numbness and tingling when Plaintiff stated in 2012 that he only experienced numbness and tingling "on occasion." (Tr. at 40, *comparing* Tr. 280 with Tr. 287, 290, 293). An ALJ may reasonably give less weight to an opinion when it is inconsistent with the provider's treatment notes. *See id.; see also West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697 (6th Cir. 2007) (unpublished) ("We find that the ALJ did not err in refusing to give probative weight to a treating physician's opinion that is contradicted by statements from the claimant himself."). The Court concludes that the ALJ properly explained the weight given to the treating physician's opinion and did not err in this regard.

---

there is no evidence in the record of Plaintiff's "relative poverty", noting that even after Plaintiff stopped receiving workers' compensation benefits in 2011, he continued to receive treatment and medications from Dr. Newsome on a monthly basis and that Dr. Newsome's notes consistently indicate that Plaintiff remained insured. *See* (Tr. at 56, 283-302, 305-07, 313); *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2008) ("To the extent Ms. Flaherty claims she could not afford treatment for her migraines, the record indicates that she had healthy insurance during at least part of the relative period . . . ."). The Court declines to consider this argument further.

V.

The Court also considers Plaintiff's argument that the ALJ's decision is flawed because it fails to account for Plaintiff's reported depression. Plaintiff complains that the ALJ's decision is based upon an "incomplete evaluation of [his] depression issues" and that it "never truly evaluates whether that non-exertional impairment is severe or non-severe" and that the impairment is never incorporated in any of the hypotheticals proffered to the VE.

Contrary to Plaintiff's argument, the ALJ explicitly discussed why he found Claimant's reported depression to be non-severe: "there is no evidence of formal mental health treatment or hospitalization related to a mental health issue." (Tr. 37). In Plaintiff's application for benefits, he never mentioned mental impairments. (*See* Tr. 198). In a report to the agency, Plaintiff admitted that he had no difficulties with memory, concentration, completing tasks, understand, following instructions, or getting along with others (Tr. 225). In fact, at the consultative examination, Dr. Winkle observed that Plaintiff's mood and affect were appropriate and he related normally to the examiner (Tr. 273). Dr. Newsome's single note referencing psychiatric status indicated that Plaintiff had a normal mental status (see Tr. 306-307). It was not until April

2012 that Plaintiff told Dr. Newsome that he felt depressed, leading her to prescribe Celexa (see Tr. 284-85). He simply stated that he was "feeling down and [did] not want to do things he normally enjoyed" (Tr. 284). In Dr. Newsome's opinion that Plaintiff was unable to work, she did not reference concerns about his mental health. (*See* Tr. 280). Dr. Hess opined that there was "no evidence of a discrete mental impairment" (Tr. 93). At the hearing, Plaintiff admitted that his only treatment for depression was Celexa and that he had never seen a psychologist or psychiatrist (Tr. 71).

Without evidence that Plaintiff's reported depression significantly limited Plaintiff's ability to do basic work activities, the ALJ reasonably found that it was non-severe. *See* 20 C.F.R. § 404.1521(a). Furthermore, Plaintiff never states what limitations the ALJ should have included within his RFC to account for his claimed depression. Ultimately, the Court concludes that the ALJ reasonably declined to recognize depression as a severe limitation or to include any mental restrictions within the hypothetical presented to the VE or within Plaintiff's RFC (see Tr. 38, 64). *See Casey v. Sec'y of Health & Human Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those

13

limitations accepted as credible by the finder of fact." (citation omitted)).**VI.**

Finally, the Court considers Plaintiff's argument that the ALJ erroneously concluded that there were light and sedentary jobs available to Claimant because the recognized need for a sit/stand option would preclude the performance of those jobs in light of Social Security Ruling 83-12. However, SSR 83-12 addresses the use of the Medical-Vocational Rules (Grids) at step five. SSR 83-12, 1983 WL 31253, at *4. It directs an ALJ to do precisely what the ALJ did here: when the effect of a limitation such as the sit/stand option on the occupational base is unclear, the ALJ may need to consult a VE instead of relying upon the Grids. *See id*. at *2, 4 ("In cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base."); *Bradley v. Secretary of Health and Human. Services*, 862 F.2d 1224, 1227 (6th Cir. 1988) (". . . a claimant is not disabled simply based on a need to alternate between sitting, standing and walking if a vocational expert can identify. . .jobs. . .that can be performed within the claimant's limitations.").

The VE testified that the occupational base for one position – cashier – would be decreased due to the sit/stand

option, but the VE also testified that the occupational base for the other positions would not be affected. (Tr. 65, 73). Nor did the ALJ err in relying on the VE's testimony because the DOT does not discuss the sit/stand option, as Plaintiff contends. [Pl. Br. 2]. One of the purposes of consulting a VE is to delve into limitations not fully clarified in the DOT. *See* 20 C.F.R. § 404.1566(e); SSR 83-12, 1983 WL 31253, at *4; *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) (unpublished) ("The ALJ could include a sit-stand option, even when such an option is not indicated in the [DOT], because the [DOT] is only one source that can be used to assess the availability of jobs [the claimant] can do." (citation omitted)).

Ultimately, the Court concludes that the ALJ could and did reasonably rely on the VE's testimony to find that Plaintiff could perform work existing in significant numbers in the national economy (Tr. 41-42). *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (ALJ may rely upon VE testimony as substantial evidence). There is, thus, substantial evidence in the record to support the conclusion of the ALJ.

## VII.

Plaintiff has not met his burden of proving his condition caused disabling limitations. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382a(3)(H)(i); 20 C.F.R. §§ 404.1512(a), (c), 404.1529(a),

416.912(a), (c), 416.929(a); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). The ALJ properly considered the relevant evidence and performed his duty as the trier of fact of resolving any conflicts in the evidence. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence supports the ALJ's assessment of Plaintiff's RFC and his hypothetical question to the VE. Therefore, the VE's testimony provides substantial evidence to support the ALJ's finding that Plaintiff could perform other work. *See Foster*, 279 F.3d at 356-57; *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779-80 (6th Cir. 1987). Substantial evidence supports the ALJ's findings and his conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

Accordingly, **IT IS ORDERED:**

(1) that Plaintiff's Motion for Summary Judgment [DE 15] is **DENIED;** and

(2) that Defendant's Motion for Summary Judgment [DE 18] is **GRANTED.**

This the 30th day of September, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge